IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| PATRICK MCKENNA, : | |
|     Plaintiff, : | |
| : | |
| v. : | CIVIL ACTION NO. 25-4699 |
| : | |
| JUDGE THERESA M. JOHNSON, et al., : | |
|     Defendants. : | |

<u>MEMORANDUM</u>

**MARSTON, J.**                                                                                     September 18, 2025

Patrick McKenna filed a pro se Complaint asserting civil rights claims against two judges, two prosecutors, and two parole officials involved in his state court criminal cases. (Doc. No. 4.) McKenna also seeks leave to proceed *in forma pauperis*. (Doc. No. 1.) For the reasons below, the Court grants McKenna leave to proceed *in forma pauperis* and dismisses his Complaint.

**I.**  **FACTUAL ALLEGATIONS**[1]

    **A.**  **McKenna's Guilty Plea, Sentence, and Probation Violations**

On April 4, 2016, McKenna pled guilty to Counts Two and Three of an Information. (Doc. No. 4 at 22–29.) Count Two was a charge for driving under the influence (DUI), a misdemeanor of the first degree, and Count Three was a charge for driving under suspension. (*Id.*). At the time, it was "McKenna's third DUI for sentencing purposes and third lifetime DUI." (*Id.* at 27). Defendant Judge Eleni Dimitriou Geishauser sentenced McKenna on Count

---

[1] The factual allegations set forth in this Memorandum are taken from McKenna's Complaint and attached exhibits. (Doc. No. 4.) The Court adopts the pagination supplied by the CM/ECF docketing system. Grammar, spelling, and punctuation errors are cleaned up where necessary.

Two to the intermediate punishment program[2] ("IPP") for a period of 5 years under the supervision of the Berks County Probation Office and ordered that the IPP begin immediately. (*Id.*) In addition to the IPP, McKenna was sentenced to 5 days in jail, followed by 360 days of electronic monitoring.[3] (*Id*. at 27–28.) Judge Dimitriou Geishauser also sentenced McKenna on Count Three to the IPP for a period of 90 days, and 5 days in jail, followed by 85 days of electronic monitoring. (*Id.* at 28.) The IPP period on both Counts 2 and 3 were ordered to run concurrently. (*Id.* at 29.) The remaining counts in the Information were dismissed. (*Id.*)

McKenna alleges that while he was in the IPP, his rights were violated in four ways. *First*, he alleges that Judge Dimitriou Geishauser forced him to sign medical releases and told him what psychiatrist he could see and what medications he would take. (*Id.* at 4.) *Second*, McKenna alleges that on March 21, 2019, he suffered "22 seizures" from medication that was prescribed by the psychiatrist that Judge Dimitriou Geishauser directed him to see. (*Id.*) While he was suffering from these seizures, McKenna's girlfriend drove him to the Berks County courthouse where his urine sample was forcefully taken.[4] (*Id.*) Despite his obvious medical issues, McKenna alleges that no one called an ambulance for him until after his urinalysis came back negative. (*Id.* at 4–5.)

---

[2] The IPP "is a sentencing method that provides an alternative to incarceration and delivers treatment for alcohol and drug issues related to crimes for offenders at Levels 2, 3, and 4 of the Pennsylvania Sentencing Guidelines." Pennsylvania Commission on Crime and Delinquency, *Intermediate Punishment*, https://www.pa.gov/agencies/pccd/programs-and-services/criminal-justice/problem-solving-courts-and-intermediate-punishment (last visited Sept. 16, 2025).

[3] Attached to the Complaint is a transcript of a guilty plea and sentencing hearing from April 4, 2016, in *Commonwealth v. McKenna*, CP-06-CR-4354-2015 (C.P. Berks). (Doc. No. 4 at 22–29). As part of his sentence, the court ordered McKenna "to participate in any program, including inpatient treatment, such as drug an[d] alcohol, mental health and others as directed by Berks County Probation Office." (*Id.* at 28.) McKenna was further ordered "to submit to urine surveillance." (*Id.*)

[4] McKenna claims that despite being in the middle of a severe medical emergency, his girlfriend, a certified nursing assistant, drove him to the Berks County courthouse for the IPP. (Doc. No. 4 at 4.)

2

*Third*, McKenna alleges that after the seizure incident, he returned to the courthouse and Judge Dimitriou Geishauser tried to make McKenna sign two documents, but he refused to sign them without counsel being present. (*Id*. at 5.) McKenna claims that once he refused to sign the documents, Judge Dimitriou Geishauser said she would ensure that he served 2.5 to 5 years' imprisonment "up-state." (*Id.*) McKenna does not specify what documents Judge Dimitriou Geishauser allegedly tried to force him to sign.

*Fourth*, McKenna alleges that between August 8, 2017, and April 18, 2019, Judge Dimitriou Geishauser sentenced him to terms of imprisonment for parole violations without defense counsel present. (*Id.* at 4.) Yet McKenna does not identify what parole violations he committed, when he was sentenced to terms of imprisonment for the parole violations, or how long he was imprisoned for each parole violation.[5]

### B.    McKenna's Hearings Before Judge Johnson

McKenna claims that he detailed all these issues in an affidavit that he submitted to Defendant Judge Theresa M. Johnson during a hearing on July 10, 2019. (*Id.* at 5.) The affidavit that McKenna submitted is not attached to his Complaint, but he did attach an affidavit dated June 21, 2025, from his girlfriend, Laura Molnar, which details the 2019 seizure episode and forced urine sample. (*Id.* at 61–62.) McKenna alleges that after he submitted his affidavit, Judge Johnson questioned his girlfriend about the seizure incident but "failed to investigate the claims that could have been construed as criminal negligence." (*Id*. at 6.)

---

[5] McKenna attaches to his Complaint a criminal case tracking record, but it does not show the sentences that he received for parole violations or when he was sentenced for parole violations between August 8, 2017, and April 18, 2019. (*See* Doc. No. 4 at 31–32.)

3

Then on July 31, 2019, Judge Johnson held a hearing on McKenna's violation of the terms of his probation.[6] (*Id*.) McKenna makes several allegations about what was said during this hearing. He claims, for example, that he told Judge Johnson he had already served almost two years for his DUI conviction and should not have to serve any more prison time. (*Id.*) He also says that he told Judge Johnson he did not agree to plead guilty to the probation violation and was being coerced by his attorney to plead guilty. (*Id.*) Yet McKenna attached a transcript of the hearing to his Complaint, and the transcript belies these allegations. A review of the transcript shows that McKenna never told Judge Johnson (a) that he should not have to serve any more time, (b) that he did not agree to the plea deal, or (c) that he felt coerced in any way. (*See id.* at 36–41.) Though there was some confusion at the hearing about whether McKenna had violated parole or probation conditions because he had originally been placed in the IPP, Judge Johnson ultimately found that McKenna had committed a probation violation. (*Id*. at 39–41, 43.)

McKenna's Complaint fast forwards to July 27, 2020. On that date, Judge Johnson held a virtual sentencing hearing on McKenna's "Class I Misconduct."[7] (*Id.* at 7–8.) McKenna alleges that Judge Johnson removed him from the IPP and sentenced him to a term of 2.5 to 5 years on Count 2 of the original Information. (*Id.*) According to McKenna, he could not speak with counsel before, during, or after the hearing, and asserts that counsel was either not present or not visible on the screen during the hearing. (*Id.*) He also says he objected to the increased sentence imposed by Judge Johnson, which he asserts was the maximum allowable for being removed from the IPP, because he never agreed to be placed in the IPP to begin with and was in fact

---

[6] Prior to this hearing, the court had formally "removed [McKenna] from the DUI Treatment Court." (*Id.* at 38.)

[7] McKenna does not specify why he received a "Class I Misconduct", and the sentencing transcript does not make clear why McKenna received a "Class I Misconduct."

4

innocent of the original DUI charge. (*Id.*) Once more, however, the transcript of the hearing that McKenna attaches to his Complaint belies these allegations. The transcript reflects that (1) defense counsel attended the sentencing via video, (2) McKenna declined the opportunity for allocution prior to the pronouncement of his sentence, and (3) he did not object to the sentence. (*Id.* at 45–59.)

### C. McKenna's Document Requests

After the allegations relating to the hearing on July 27, 2020, McKenna's Complaint jumps around chronologically and mixes factual allegations with legal conclusions. (*See id.* at 10–16.) From what the Court can discern, McKenna's remaining factual allegations relate to his efforts to get hearing transcripts in his criminal cases and other information related to his criminal cases.

First, McKenna alleges that he requested transcripts of several court hearings, but his requests were denied by Judge Dimitriou Geishauser. (Doc. No. 4 at 11, 64–68.) He later renewed his requests for transcripts, but Judge Johnson denied them because he had no appeal pending. (*Id.* at 69–80.) After Judge Johnson's denial of his transcript requests, McKenna filed a notice of appeal (*id*. at 82) and requested his transcripts for a third time (*id*. at 83–85). The Pennsylvania Superior Court remanded the case for a determination of which documents and transcripts were necessary and relevant for the appeal. (*Id*. at 87.) Judge Johnson then ordered that McKenna be provided with a transcript of the July 27, 2020, hearing. (*Id*. at 88.)

Second, McKenna filed a request under the Right-to-Know Law with the Berks County District Attorney's office on October 28, 2024. (*Id.* at 97.) In his request, he asked for the "record of discovery" in his 2015 criminal case. (*Id*.) This request was denied by Defendant Assistant District Attorney ("ADA") Alisa Hobart on November 6, 2024, because McKenna

sought "investigative materials," which were exempt from disclosure under the Right-to-Know Law. (*Id.* at 98.)

And last, McKenna sought documents on his criminal docket from the Berks County Clerk of Court. (*Id*. at 102–104.) McKenna received a copy of an order signed by Judge Thomas Parisi and several pages of redacted documents. (*Id.* at 105–110.)

### D. McKenna's Current Allegations

McKenna now brings a host of constitutional claims against the judges, assistant district attorneys, and parole officers that were allegedly involved in his criminal case. (*See generally id.* at 1–18.) Specifically, he names as Defendants Judges Johnson and Dimitriou Geishauser, ADAs Justin Bodor and Alisa Hobart, and Chief Parole Officer Daniel Heydt and Parole Officer John Piscitelli. (*Id.* at 1–3.) Several claims appear to challenge his conviction and sentence, and his other claims are for malicious prosecution, First Amendment retaliation, and due process and equal protection violations. In addition, McKenna brings claims for overdetention and a Fourth Amendment violation. (*Id.* at 15, 16.) McKenna seeks money damages and declaratory relief.[8]

## II. STANDARD OF REVIEW

The Court grants McKenna leave to proceed *in forma pauperis*.[9] Accordingly, 28 U.S.C. § 1915(e)(2)(B)(ii) requires the Court to dismiss the Complaint if it fails to state a claim. Whether a complaint fails to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6), *see*

---

[8] McKenna's request for declaratory relief is improper because declaratory relief is unavailable solely to adjudicate past conduct. *See Corliss v. O'Brien*, 200 F. App'x 80, 84 (3d Cir. 2006) (*per curiam*) ("Declaratory judgment is inappropriate solely to adjudicate past conduct" and is not "meant simply to proclaim that one party is liable to another.").

[9] Because McKenna is a prisoner, he must still pay the $350 filing fee for this case in installments as required by the Prison Litigation Reform Act.

*Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999), which requires the Court to determine whether the Complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face," *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotations omitted). At the screening stage, the Court will accept the facts alleged in the *pro se* Complaint as true, draw all reasonable inferences in McKenna's favor, and "ask only whether that complaint, liberally construed, contains facts sufficient to state a plausible claim." *Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021) (cleaned up), *abrogation on other grounds recognized by Fisher v. Hollingsworth*, 115 F.4th 197 (3d Cir. 2024). On statutory screening, the Court may consider information contained in public records. *See Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006).

### III.  DISCUSSION

McKenna brings several constitutional claims. The vehicle by which federal constitutional claims may be brought in federal court is 42 U.S.C. § 1983. "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988); *see also Groman v. Township of Manalapan*, 47 F.3d 628, 638 (3d Cir. 1995) ("The color of state law element is a threshold issue; there is no liability under § 1983 for those not acting under color of law."). And a "defendant in a civil rights action must have personal involvement in the alleged wrongs" to be liable. *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988).

In his Complaint, McKenna makes several constitutional claims, which seem to challenge his state-court conviction and sentence. (*See* Doc. No. 4 at 4–9.) He also brings claims against Judges Dimitriou Geishauser and Johnson, ADAs Bodor and Hobart, and parole officers Heydt

and Piscitelli. The Court first addresses his claims that appear to challenge his conviction and sentence and then evaluates the claims he brings against each group of Defendants as well as his overdetention and Fourth Amendment violation claims.

### A. Claims Challenging His Conviction and Sentence

First, McKenna asserts several constitutional violations, which suggest that his state-court conviction and sentence are unlawful. (*See generally id.*) He argues, for example, that his Sixth Amendment rights were violated multiple times between August 8, 2017, and April 18, 2019, that his due process rights were violated by his sentence on July 31, 2019, and that his re-sentencing on July 27, 2020, violated the double jeopardy clause. (*Id.* at 4–7.) The Court discerns at least two issues with these claims.

For one, to the extent McKenna attempts to challenge "the fact or duration of his confinement, his sole federal remedy is a writ of habeas corpus, not a § 1983 action."[10] *Williams v. Consovoy*, 453 F.3d 173, 177 (3d Cir. 2006). Indeed, the Third Circuit has said that "the exclusive method of challenging an allegedly unconstitutional state conviction in the lower federal courts is a habeas corpus action." *Chapman v. Pennsylvania*, 82 F. App'x 59, 64 (3d Cir. 2003). Thus, McKenna's claims that try to invalidate his conviction and sentence are not "cognizable" in this "federal civil rights case." *Cook v. Harkom*, 651 F. App'x 84, 85 (3d Cir. 2016). Nothing in this Memorandum should be construed to prevent McKenna from raising his constitutional claims in his state criminal case or through a habeas petition.[11] *See Rushing v. Pennsylvania*, 637 F. App'x 55, 58 n.4 (3d Cir. 2016) (*per curiam*) ("The District Court's

---

[10] In other words, if McKenna wants to challenge the fact of confinement and seek release based on allegedly defective probation revocation procedures, the proper vehicle for such a claim is a petition for writ of *habeas corpus* after the exhaustion of available state court remedies. *Williams*, 453 F.3d at 177.

[11] The Court expresses no opinion on the merits of those claims.

8

dismissal of [the plaintiff's] § 1983 complaint should not constitute a bar to any collateral attacks by [the plaintiff] against his state proceedings.").

For another, to the extent that McKenna seeks money damages based on these constitutional violations, his claims must also be dismissed. When a plaintiff seeks damages in a civil rights lawsuit, "the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated." *Heck v. Humphrey*, 512 U.S. 477, 487 (1994). Courts commonly refer to this as the "*Heck* bar," *see Wallace v. Kato*, 549 U.S. 384, 385 (2007), and it prevents a plaintiff from bringing claims, the success of which would render a sentence or conviction invalid, unless the plaintiff can show "that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus," *Heck*, 512 U.S. at 486–87. Though McKenna makes a conclusory allegation that all the charges for which he is currently incarcerated were dismissed or withdrawn at some point prior to October 20, 2021, (*see* Doc. No. 4 at 15), there is no indication in the public record that his sentence was ever vacated, modified, or otherwise called into question on direct appeal or otherwise, *see McKenna*, CP-06-CR-4354-2015. Thus, his claims for money damages based on these constitutional violations are barred by *Heck* because judgment in his favor on them necessarily implies the invalidity of his underlying conviction or sentence.

B.   **Claims Against Judges**

Second, McKenna brings constitutional claims against Judges Dimitriou Geishauser and Johnson based on their sentencing decisions and denials of his requests for transcripts. (Doc. No.

9

4 at 11–16.) Judges are entitled to absolute immunity from civil rights claims that are based on acts or omissions taken in their judicial capacity so long as they do not act in the complete absence of all jurisdiction. *See*, *e.g.*, *Stump v. Sparkman*, 435 U.S. 349, 355–56 (1978); *Harvey v. Loftus*, 505 F. App'x 87, 90 (3d Cir. 2012) (*per curiam*); *Azubuko v. Royal*, 443 F.3d 302, 303–04 (3d Cir. 2006) (*per curiam*).  An act is taken in a judge's judicial capacity if it is "a function normally performed by a judge." *Gallas v. Supreme Ct. of Pa.*, 211 F.3d 760, 768 (3d Cir. 2000).  And "[g]enerally . . . 'where a court has some subject matter jurisdiction, there is sufficient jurisdiction for immunity purposes.'" *Figueroa v. Blackburn*, 208 F.3d 435, 443–44 (3d Cir. 2000) (quoting *Barnes v. Winchell*, 105 F.3d 1111, 1122 (6th Cir. 1997)).  Because McKenna's claims against Judges Dimitriou Geishauser and Johnson stem from actions they took in their judicial capacity in a case where they had jurisdiction, his claims against them are barred by judicial immunity and are thus dismissed with prejudice.

        **C.**      **Claims Against Prosecutors**

Third, McKenna brings constitutional claims against two prosecutors: (1) ADA Bodor and (2) ADA Hobart.  The Court addresses McKenna's claim against each prosecutor in turn.

*Claims against ADA Bodor*.  McKenna alleges that ADA Bodor represented the Commonwealth during the sentencing hearing on July 27, 2020, where McKenna was allegedly sentenced outside the Pennsylvania sentencing guidelines range and was punished for exercising his First Amendment rights. (Doc. No. 4 at 7–9.) He also appears to assert selective prosecution, malicious prosecution, and equal protection claims against ADA Bodor based on the disparity in treatment between himself and two other defendants who were removed from the IPP but not resentenced and only recommitted to serve their original, unexpired terms. (*Id.* at 10–11.)

Prosecutors are entitled to absolute immunity from liability under § 1983 for acts that are "intimately associated with the judicial phase of the criminal process" such as "initiating a prosecution and . . . presenting the State's case." *Imbler v. Pachtman*, 424 U.S. 409, 430–31 (1976). Absolute immunity extends to the decision to initiate a prosecution, *id.* at 431, "soliciting false testimony from witnesses in grand jury proceedings and probable cause hearings," *Kulwicki v. Dawson*, 969 F.2d 1454, 1465 (3d Cir. 1992), and "appearing before a judge to present evidence," *Fogle v. Sokol*, 957 F.3d 148, 160 (3d Cir. 2020). Absolute immunity does not protect prosecutors, however, when they "function as investigators, rather than advocates." *Fogle*, 957 F.3d at 160 (internal quotations omitted).

Here, McKenna's claims against ADA Bodor stem from his representation of the Commonwealth at the resentencing hearing on July 27, 2020. (*See* Doc. No. 4 at 7–11.) During that hearing, ADA Bodor acted as an advocate on behalf of the Commonwealth, and his work was "intimately associated with the judicial phase of the criminal process." *Fogle*, 957 F.3d at 160 (internal quotations omitted). So regardless of ADA Bodor's motivations, McKenna's claims against him fail because he is entitled to absolute immunity for claims arising from his conduct at the resentencing hearing. *See Yarris v. County of Delaware*, 465 F.3d 129, 139 (3d Cir. 2006) ("With respect to the solicitation of false statements alleged here, the ADAs are entitled to absolute immunity to the extent that their conduct occurred while they were acting as advocates rather than investigators."); *Baker v. Carter*, No. CV 25-2972 (ZNQ) (RLS), 2025 WL 1431184, at *4 (D.N.J. May 19, 2025) ("As courts have made clear, prosecutors are absolutely immune from liability when they act as advocates for the State."). McKenna's claims against ADA Bodor are thus barred by absolute immunity and dismissed with prejudice.

*Claims against ADA Hobart*.  McKenna also appears to bring constitutional claims against ADA Hobart because she denied his request under Pennsylvania's Right-to-Know Law for discovery materials related to his 2015 criminal case.  (Doc. No. 4 at 13–14, 98.)  McKenna's constitutional claims fail, however, because an "alleged violation[ ] of Pennsylvania's Right-To-Know law do[es] not give rise to a constitutional claim."  *Breslin v. Portillo*, No. 12-360, 2018 WL 4002858, at *4 (M.D. Pa. Aug. 22, 2018); *see McCullough v. County of Allegheny*, No. 16-534, 2016 WL 7116640, at *2 (W.D. Pa. Dec. 7, 2016) ("Plaintiff's RTK state law claim is not cognizable under section 1983").  So, the Court dismisses McKenna's constitutional claims against ADA Hobart.  Because any constitutional claim based on an alleged violation of Pennsylvania's Right-to-Know Law is not cognizable, McKenna's claims against ADA Hobart are dismissed with prejudice as amendment would be futile.  *See Montanez-Johnson v. Chester Upland Sch. Dist.*, 762 F. Supp. 3d 433, 440 (E.D. Pa. 2025) ("[A] complaint may be dismissed with prejudice (and a plaintiff denied leave to amend) if amendment would be inequitable or futile.").

D. **Claims Against Parole Officials**

McKenna then brings claims against two parole officials:  (1) Chief Parole Officer Daniel Heydt and (2) Parole Officer Piscitelli.  The Court addresses his claims against each parole officer in turn.

*Claims against Chief Parole Officer Daniel Heydt*.  Though McKenna names Heydt as a Defendant, he fails to allege any facts to indicate that Heydt was personally involved in the acts he describes.  To the extent that Heydt is named simply due to his high-ranking position, this is not sufficient to state a plausible claim.  Supervisors are not liable for alleged constitutional violations committed by their subordinates simply because they employ them.  *Chavarriaga v.*

12

*N.J. Dep't of Corr.*, 806 F.3d 210, 227 (3d Cir. 2015) (holding that liability under § 1983 cannot be predicated on a *respondeat superior* basis); *Jutrowski v. Township of Riverdale*, 904 F.3d 280, 290 (3d Cir. 2018) ("Each Government official, his or her title notwithstanding, is only liable for his or her *own* misconduct." (internal quotations omitted)).  Rather, "[s]uits against high-level government officials must satisfy the general requirements for supervisory liability." *Wharton v. Danberg*, 854 F.3d 234, 243 (3d Cir. 2017).

There are "two general ways in which a supervisor-defendant may be liable for unconstitutional acts undertaken by subordinates." *Barkes v. First Corr. Med., Inc.*, 766 F.3d 307, 316 (3d Cir. 2014), *reversed on other grounds by Taylor v. Barkes*, 575 U.S. 822 (2015). First, a supervisor may be liable if he or she "with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused [the] constitutional harm." *Id.* (quoting *A.M. ex rel. J.M.K. v. Luzerne Cnty. Juvenile Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004) (alteration in original)).  Second, a supervisor may "be personally liable under § 1983 if he or she participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in the subordinate's unconstitutional conduct." *Id*.  "Allegations of participation or actual knowledge and acquiescence, however, must be made with appropriate particularity." *Rode*, 845 F.2d at 1207.

Here, McKenna makes no allegations that Heydt maintained a policy, practice, or custom that caused McKenna to suffer a constitutional harm.  Nor does McKenna allege that Heydt was personally involved in the alleged violation of his constitutional rights.  The Court will thus dismiss McKenna's constitutional claims against Heydt without prejudice.

*Claims against Parole Officer Piscitelli.* McKenna brings claims for malicious prosecution and First Amendment retaliation against Piscitelli.[12] Neither claim is plausible as currently alleged.

First, McKenna has failed to allege a plausible malicious prosecution claim. The elements of a § 1983 malicious prosecution claim are: "(1) the defendants initiated a criminal proceeding; (2) the criminal proceeding ended in plaintiff's favor; (3) the proceeding was initiated without probable cause; (4) the defendants acted maliciously or for a purpose other than bringing the plaintiff to justice; and (5) the plaintiff suffered deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding." *Estate of Smith v. Marasco*, 318 F.3d 497, 521 (3d Cir. 2003). While McKenna alleges that all the charges for which he is currently incarcerated were dismissed or withdrawn at some point prior to October 20, 2021, (*see* Doc. No. 4 at 15), there is no indication in the public record that his sentence was ever vacated, modified, or otherwise called into question on direct appeal or otherwise, *see McKenna*, CP-06-CR-4354-2015. Thus, *Heck* bars McKenna's "malicious prosecution claim because his conviction has not been invalidated." *Olick v. Pennsylvania*, 739 F. App'x 722, 725–26 (3d Cir. 2018) (*per curiam*). Accordingly, the Court dismisses his malicious prosecution claim against Piscitelli without prejudice.

Second, to the extent McKenna brings a First Amendment retaliation claim against Piscitelli, it is not plausible either. "In order to establish a First Amendment retaliation claim, a plaintiff must prove (1) that he engaged in constitutionally-protected activity; (2) that the

---

[12] McKenna makes several other factual allegations about Piscitelli, but he does not appear to base a claim upon them. These allegations include that Piscitelli ordered him to report to the IPP courtroom and bring a toxicology report from the hospital on March 25, 2019, (Doc. No. 4 at 5); Piscitelli was possibly the probation officer that attended the hearing on July 31, 2019 (*id.* at 34–41); and during a hearing conducted on July 10, 2019, Judge Johnson allegedly told Piscitelli not to speak and then ordered him to leave the courtroom (*id.* at 5–6).

14

government responded with retaliation; and (3) that the protected activity caused the retaliation." *George v. Rehiel*, 738 F.3d 562, 585 (3d Cir. 2013) (internal quotations omitted).  Here, it is unclear how McKenna's production of an affidavit at the hearing on July 10, 2019, was a substantial or motivating factor in Judge Johnson's sentencing decision over a year later, let alone how Piscitelli was implicated in any violation of McKenna's First Amendment rights as Judge Johnson determined his sentence, not Piscitelli.  Because there is no allegation that McKenna suffered an adverse action by Piscitelli, his First Amendment retaliation claim must be dismissed without prejudice.

### E. Eighth Amendment Overdetention and Fourth Amendment Claims

McKenna last asserts claims for "overdetention" and a Fourth Amendment violation. (Doc. No. 4 at 15–16.)  McKenna alleges that he "has been illegally and unlawfully detained 4 years, 4 months, and 7 days . . . past his original maximum date of April 4, 2021." (*Id.* at 15.) "Detention beyond an inmate's maximum term of imprisonment may constitute cruel and unusual punishment under the Eighth Amendment and give rise to a claim under 42 U.S.C. § 1983."  *Herrera v. Agents of Pa. Bd. of Prob. & Parole*, 132 F.4th 248, 254 (3d Cir. 2025). "To plead an Eighth Amendment overdetention claim, a plaintiff must allege that (1) a prison official knew of the prisoner's possible overdetention and the risk that unwarranted punishment was being, or would be, inflicted; (2) the official failed to act or took only ineffectual action under the circumstances, indicating that his response to the problem was a product of deliberate indifference to the prisoner's plight; and (3) there was a causal connection between the official's response, or lack thereof, and the overdetention." *Id.* at 258.

The Court discerns multiple issues with McKenna's overdetention claim.  *First*, he fails to specify against whom he is bringing an overdetention claim.  This omission is crucial because

the Defendants that he has named either enjoy immunity from such claims or did not have any personal involvement in his alleged overdetention. *See Johnson v. Wetzel,* No. 22-CV-0382, 2023 WL 4424828, at *5 (E.D. Pa. July 7, 2023) (dismissing an overdetention claim, in part, because plaintiff "does not allege that [Defendant] was involved in the setting, calculating, or any modifying of his release date or in the enacting or implementing of any policies or procedures concerning the determination of his release date"). *Second*, overdetention claims are properly brought against prison officials, and McKenna must allege that "a prison official knew of [his] possible overdetention." *Herrera*, 132 F.4th at 258. McKenna neither sues a prison official nor alleges that any prison official had knowledge of his overdetention. *Third*, McKenna alleges that the latest date he could be imprisoned for his conviction was "April 4, 2021." (Doc. No. 4 at 15.) Not so. On April 4, 2016, McKenna pled guilty to a charge in the Information (Count 2) that carried a maximum term of 5 years' imprisonment. (*Id.* at 25.) But he was not sentenced to the statutory maximum on April 4, 2016. Instead, he was sentenced to 5 days' imprisonment on Count 2 and 5 years of supervision by the Berks County Probation Office. (*Id.* at 27). On July 31, 2019, McKenna was incarcerated due to a probation violation (*id.* at 39–41, 43), and he was resentenced to 2.5 to 5 years' imprisonment on Count 2 on July 27, 2020, (*id.* at 57). And he was given credit for "459 days' time served." (*Id.*) Thus, McKenna has not plausibly alleged that he has been overdetained, and so his overdetention claim is not plausible as currently pleaded.

McKenna also asserts that his Fourth Amendment rights were violated on March 21, 2019, "when the illegal urinalysis was extracted." (Doc. No. 4 at 15.) The Court is skeptical that any claim based on this urinalysis could be timely because McKenna brought this suit on August 15, 2025—more than six years after the alleged Fourth Amendment violation occurred. (*Id.* at

1.) The Court also doubts whether any claim McKenna has related to the urine sample could be plausible since a condition of his release was that he "submit to urine surveillance." (*Id.* at 28.) Still, McKenna may attempt to flesh out this claim in his amended complaint.

IV.    **CONCLUSION**

For the reasons above, McKenna's application to proceed *in forma pauperis* is granted and his Complaint is dismissed in part with prejudice and in part without prejudice. First, his claims that challenge his conviction and sentence or are barred by *Heck* are dismissed without prejudice. Second, his claims against the named judges and prosecutors are dismissed with prejudice. *See Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108, 110 (3d Cir. 2002) (stating that complaints dismissed under the Prison Litigation Reform Act should be with leave to amend "unless amendment would be inequitable or futile"). Third, his claims against the parole officer defendants are dismissed without prejudice, and McKenna is granted leave to file an amended complaint if he can allege facts showing that a named Defendant was personally involved in (1) a malicious prosecution claim that has accrued, *i.e.*, that the sentence he received has been vacated, altered, or otherwise changed, or the conviction upon which it is based has been reversed, or (2) an act of First Amendment retaliation, *i.e.*, he suffered an adverse action at the hands of a defendant for which his constitutionally protected conduct was a substantial or motivating factor. And last, McKenna's claims for overdetention and a Fourth Amendment violation are dismissed without prejudice. An appropriate order follows.